<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DENISE F. ELBECK,** *Plaintiff,* v. **COMMISSIONER OF SOCIAL SECURITY,** *Defendant.* | Civil Action No. 20-17334 OPINION |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Denise F. Elbeck's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), of Administrative Law Judge Mark Solomon's (the "ALJ" or "Judge Solomon") decision denying Plaintiff's application for Disability Insurance Benefits ("DIB"). <u>See</u> ECF No. 1. For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   **A.   Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "more than a mere

1

scintilla" but less than a preponderance).  The Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  However, the ALJ must provide a "discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd, 590 F. App'x 167 (3d Cir. 2014).  Plaintiff has the burden to demonstrate how any alleged error "could have affected the outcome of [her] disability claim." See Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (internal quotation marks and citation omitted).

**B.     The Five-Step Disability Test**

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).  To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 404.1520.  First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit,

2

whether or not a profit is realized." 20 C.F.R. § 404.1572. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See 20 C.F.R. § 404.1520(c).

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established, and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Before the fourth step, the Commissioner must determine the claimant's "residual functional capacity" ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. Id.; 20 C.F.R. § 404.1545(a)(1). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, then the claim for benefits must be denied. 20 C.F.R. § 404.1520(a)(4)(iv).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that [the claimant] can do given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.   BACKGROUND

### A.   Procedural History

On April 5, 2018, at the age of 61, Plaintiff filed an application for period of disability and disability insurance benefits, alleging disability as of July 31, 2017. Administrative Transcript ("Tr.") 12, 51, ECF No. 4. Plaintiff alleged disability due to (1) neck, shoulder, and spine pain; and (2) numbness in her right arm, hand, and thumb. Tr. 52. Plaintiff's application was denied initially on August 13, 2018, and then again upon reconsideration on December 13, 2018. See Tr. 12. Plaintiff subsequently requested a hearing before an administrative law judge and appeared pro se before Judge Solomon on September 18, 2018.[1] Tr. 12. The ALJ issued a written opinion on February 5, 2020, holding that Plaintiff was not disabled. Tr. 12-20. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on October 16, 2020. Tr. 1-5. On November 29, 2020, Plaintiff filed the instant appeal. ECF No. 1.

---

[1] The ALJ informed Plaintiff of her right to seek assistance from an attorney or representative on a contingency basis before Plaintiff elected to proceed pro se. Tr. 29-30.

### B.     The ALJ's Decision

Judge Solomon determined that Plaintiff was not disabled at step four of the five-step disability analysis. At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity from the alleged disability onset date of July 31, 2017. Tr. 14.

At step two, the ALJ determined that Plaintiff had severe impairments of (1) cervical radiculopathy status post anterior cervical decompression and fusion; and (2) left breast cancer status post mastectomy. Tr. 15. The ALJ found Plaintiff's other impairments to be nonsevere. Id.

At step three, Judge Solomon found that no medical source "has mentioned findings or rendered an opinion that [Plaintiff's] impairments, singly or in combination, medically equaled the criteria of any listed impairment." Tr. 15. The ALJ gave "specific consideration" to Listing 1.04, which governed spinal disorders at the time of the decision.[2]

Prior to Step 4, Judge Solomon determined that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can sit six hours, stand/walk 6 hours; perform occasional climbing, crouching, kneeling and crawling; perform frequent stooping; lift/carry 10 pounds occasionally and 5 pounds frequently; and perform occasional handling, reaching and fingering.

Tr. 15. In reaching this RFC determination, the ALJ evaluated the relevant medical evidence and considered Plaintiff's subjective testimony of her symptoms. Tr. 15-19.[3] Among other things, the ALJ noted that on February 13, 2018, Plaintiff underwent a C4-6 distectomy with fusion and

---

[2] The Listing for musculoskeletal impairments was modified for claims filed or pending after April 2, 2021. See generally Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164. As the underlying decision was rendered prior to that date, the Court must analyze the instant appeal under the rule then in effect. Id. at 78164 n.2.

[3] The parties have summarized the relevant evidence in their briefs. See Pl. Br. at 5-12, ECF No. 7; Def. Br. at 2-12, ECF No. 8. The Court will address the medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

plating and nerve root decompression. Tr. 16-17, 485-88. Medical records show an improvement in Plaintiff's symptoms following that surgery. Tr. 17. In early 2019, Plaintiff was diagnosed with breast cancer and underwent a mastectomy on March 27, 2019. Tr. 17. Following her mastectomy, Plaintiff reported increased pain and numbness, although medical records indicated that her pain was alleviated by physical therapy from May to July 2019. Tr. 17-18.

At step four, the ALJ found that Plaintiff could perform past relevant work as a supervisor of court reporters based on the testimony of Plaintiff and a vocational expert ("VE"). Tr. 19-20. On that basis, the ALJ found that Plaintiff was not disabled within the meaning of the Act. Tr. 20.

### III. ANALYSIS

Plaintiff contends that Judge Solomon did not support his finding that Plaintiff was not disabled with substantial evidence, specifically challenging the ALJ's conclusions as to step three, the RFC, and step four. The Court will address each argument in turn.

#### A. The Step Three Determination

Plaintiff first argues that the ALJ's conclusion that Plaintiff's impairments did not satisfy Listing 1.04 is not supported by an adequate rationale or substantial evidence. Pl. Br. 16-18. The Court disagrees.

At the time of the ALJ's decision, Listing 1.04 provided as follows:

> 1.04 <u>Disorders of the spine</u> . . . resulting in compromise of a nerve root . . . or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss . . . ; or
>
> B. Spinal arachnoiditis . . . resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication . . . and resulting in an inability to ambulate effectively.

20 C.F.R. Part 404, Subpart P, App'x 1.  As with any condition, Plaintiff has the burden to show that the requisite clinical findings have "lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A); see also Johnson v. Barnhart, 89 F. App'x 364, 367 (3d Cir. 2004).

The ALJ did not specifically recite the requirements of Listing 1.04 in rendering his decision at step three.  Rather, the ALJ stated only that after giving "specific consideration" to Listing 1.04, he found that no medical source mentioned findings or rendered an opinion that Plaintiff's impairments met or medically equaled the criteria of a listed impairment.  Tr. 15.  The Court agrees that read in a vacuum, this conclusory recitation of the standard would be insufficient.  Nonetheless, the Court must read the ALJ's decision "as a whole" to determine whether substantial evidence exists to support each conclusion.  Jones, 364 F.3d at 505; see also Desorte v. Comm'r of Soc. Sec., No. 17-11407, 2019 WL 1238827, at *5 (D.N.J. Mar. 18, 2019) (explaining that an ALJ's "arguably terse" step three analysis "must be viewed in the context of the opinion as a whole which included a comprehensive discussion of Plaintiff's severe impairments").

Here, the decision as a whole provides substantial evidence for the ALJ's step three conclusion.  In assessing Plaintiff's RFC, the ALJ conducted a comprehensive review of the relevant medical evidence, including evidence concerning Plaintiff's spinal impairments.  Tr. 15-19.  Among other things, the ALJ specifically noted medical findings that Plaintiff's symptoms improved significantly following her spinal surgery on February 12, 2018, which occurred less than seven months after the alleged disability onset date.  See, e.g., Tr. 17 (discussing post-surgery report indicating that Plaintiff had "significantly improved" pain levels, only mild discomfort and right thumb numbness, and full grip and extremity strength).

Critically, Plaintiff does not point to any piece of evidence that the ALJ failed to consider, nor does she suggest which paragraph of Listing 1.04 that Plaintiff's impairments meet or medically equal. See Pl. Br. 14-16. Indeed, Plaintiff appears to concede that the current record does not establish that Plaintiff met the requirements of Listing 1.04 for a continuous period of at least 12 months. See id. at 17-18 ("There is a question as to whether or not [Plaintiff] continued to meet the requirements of the Listings of Impairments. We are not prepared to say whether it does or does not."). Consequently, Plaintiff has failed to carry her burden to demonstrate that she qualified as disabled at step three and has failed to show how any alleged error by the ALJ could have impacted the outcome of her disability claim.

### B.      The RFC Determination

Plaintiff next argues that in determining Plaintiff's RFC, the ALJ erred by improperly crediting the opinions of two state agency consultants over the more limiting opinions of Plaintiff's physicians. The Court disagrees.

An RFC should account for the most that a plaintiff can do despite her limitations. 20 C.F.R. § 416.945(a). While an ALJ must consider all relevant evidence in making an RFC determination, she need not specifically discuss "every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching her conclusions, Jones, 364 F.3d at 505. Moreover, an ALJ presented with conflicting evidence may choose which evidence to credit and weigh it accordingly but must "give some reason for discounting the evidence she rejects." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999).

Here, the ALJ determined that Plaintiff had the capacity to perform "light work," except that she can sit, stand, and walk six hours a day, occasionally climb, crouch, kneel, and crawl;

8

frequently stoop; lift or carry 10 pounds occasionally and five pounds frequently; and perform occasional handling, reaching, and fingering. Tr. 15. The ALJ relied primarily on the opinions of two state agency medical consultants who found, among other things, that Plaintiff could sit, stand, and walk for six hours a day. Tr. 18, 65-68, 950-51. The ALJ further credited Plaintiff's testimony as to her "manipulative limits"—i.e., limitations on handling, reaching, and fingering—and included them in the RFC. Tr. 19.

Plaintiff contends that the ALJ improperly found the opinions of the state consultants to be "fully persuasive" and failed to adequately explain his rationale for discounting the more limiting opinions of two of Plaintiff's physicians. First, Plaintiff points to the opinion of Dr. David Poulad ("Dr. Poulad"), who performed Plaintiff's spinal surgery. Dr. Poulad opined on May 3, 2018 that Plaintiff was limited to less than sedentary work and could stand or walk for less than two hours a day. Tr. 479-82. The ALJ found Dr. Poulad's opinion only "partially persuasive" because it was made based on treatment that occurred only one month after Plaintiff's surgery, and the record did not otherwise document any limits in standing or walking. Tr. 19.

Second, Plaintiff's oncologist, Dr. Peter Hyans ("Dr. Hyans") opined on July 15, 2019 that Plaintiff could sit up to six hours a day, stand or walk up to two hours a day, and perform no upper body exertion or travelling. Tr. 1186. The ALJ found Dr. Hyans' opinion "unpersuasive" because Plaintiff alleged no condition that would restrict walking, and contemporaneous physical therapy records showed that one week earlier, Plaintiff had returned to all normal functioning. Tr. 19, 1044-53.

The ALJ therefore fulfilled his obligation to canvass the conflicting medical opinions, determine which he found to be most persuasive, and articulate his reasons for doing so. See 20 C.F.R. § 404.1520c. Plaintiff has provided no basis to disturb the ALJ's findings that the opinions

9

of the state agency consultants were more persuasive than those of Drs. Poulad and Hyans. Importantly, the Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.

Plaintiff further maintains that the ALJ erred by failing to supplement the record with additional evidence concerning Plaintiff's disability. Specifically, Plaintiff argues that the ALJ should have contacted Dr. Hyans to determine why he opined that Plaintiff had significant limitations on her ability to walk and use her upper body. The Court disagrees. While it is true that an ALJ has "an enhanced duty to develop the record and hold a full and fair hearing," when a claimant appears pro se, Sanchez v. Comm'r of Soc. Sec., 271 F. App'x 230, 233 (3d Cir. 2008), an ALJ does not have an affirmative duty to request more information where the record before him provides substantial evidence for a disability determination. See 20 C.F.R. § 404.1520b(b)(2) ("[I]f after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency."); see also Smith v. Comm'r of Soc. Sec., 80 F. App'x 268, 269 (3d Cir. 2003) (holding that the ALJ was not obligated to obtain new evidence because "[t]he evidence before the ALJ was thorough enough to make the determination."). Here, the Court finds that the ALJ's RFC determination was supported by substantial evidence in the form of the state agency medical opinions and Plaintiff's testimony. The ALJ's failure to contact Dr. Hyans for clarification does not provide grounds for remand.

### C.     The Step Four Determination

Plaintiff last argues that the ALJ improperly failed to consider whether Plaintiff's past work was a "composite job" not listed in the Dictionary of Occupational Titles ("DOT"). The Court again disagrees.

Social Security Ruling 82-61 instructs that where a plaintiff's past work is listed in the DOT, the plaintiff should be found "not disabled" at step four if she could perform the duties of the job either (1) as "she <u>actually</u> performed it" or (2) even "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job," she can perform the job "as <u>generally</u> required by employers throughout the economy." SSR 82-61 (emphases added). However, SSR 82-61 cautions that where a claimant worked a "composite job," defined as a job with "significant elements of two or more occupations," the ALJ should instead conduct a case-specific inquiry into whether the claimant can perform her past job. <u>Id.</u>; see also <u>Levyash v. Colvin</u>, No. 16-2189, 2018 WL 1559769, at *12-13 (D.N.J. Mar. 30, 2018) ("[T]he claimant's [past relevant work] may be a composite job if it takes multiple DOT occupations to locate the main duties of the [prior work] as described by the claimant.") (citation omitted).

Before an ALJ can determine whether a claimant is able to perform her past relevant work, he must first make a threshold determination as to what jobs the claimant previously performed. "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." <u>Levyash</u>, 2018 WL 1559769, at *11 (quoting SSR 82-62). From there, the ALJ may rely on other sources, including the DOT, to determine the requirements of an occupation as "generally" performed in the national economy. <u>Id.</u> (citing SSR 82-62).

Judge Solomon concluded at step four that Plaintiff performed past relevant work as a "court reporter" (DOT No. 202.362-010) and as a "supervisor, steno pool" (DOT No. 202.132-

11

010)[4] based on testimony by Plaintiff and a VE with knowledge of the occupations listed in the DOT. Tr. 19-20. Plaintiff testified that after working as a court reporter for forty years, she worked as a supervisor for two and a half years. Tr. 40-41. She further stated that as a supervisor, she was still required to go into the courtroom and perform stenography work, depending on case load and staffing. Tr. 40. The record does not reflect the precise frequency that Plaintiff acted as a court reporter, but Plaintiff testified that she was required to type 225 words per minute to retain the required certification for her job. Tr. 45.

The VE testified based on Plaintiff's testimony and a review of the documentation in her file that Plaintiff's past work was classified as "court reporter" and "supervisor, steno pool" under the DOT. Tr. 42. The VE further testified that as generally performed in the national economy, the job of court reporter requires "frequent fingering," while the job of supervisor, steno pool requires only "occasional" fingering. Tr. 43. As Plaintiff's RFC provides for "occasional" fingering, the ALJ therefore found that Plaintiff could perform her past work as a supervisor, steno pool. Tr. 19-20.

Plaintiff argues that due to her testimony that she was required to work as a stenographer even after her promotion to supervisor, her past work did not fall into a single provision of the DOT, and the ALJ should have considered whether her job was a composite of both "court reporter" and "supervisor, steno pool." The DOT entry for supervisor, steno pool, provides as follows:

> Supervises and coordinates activities of workers engaged in taking and transcribing dictation of correspondence and reports: Assigns stenographers to executives and department heads to take dictation and transcribe correspondence and memos. Assigns manuscript or recorded messages to workers for transcription. Verifies typed copy

---

[4] The ALJ labeled Plaintiff's supervisory position as "supervisor, court reporter." Tr. 19. As Plaintiff correctly observes, the correct title of the occupation listed in DOT No. 202.131.010 is "supervisor, steno pool."

12

> for neatness, spelling, and punctuation.  <u>Performs other duties as described under SUPERVISOR (clerical) Master Title</u>.

Supervisor, Steno Pool, DOT 202.132-010, 1991 WL 671674 (emphasis added).  The DOT Master Title entry for supervisor (clerical) then provides, among other things, that a supervisor "[m]ay perform or assist subordinates in performing duties."  DOT Master Titles and Definitions, Supervisor, 1991 WL 645981.

Examining substantially similar language, the court in <u>Maletto v. Kijakazi</u> determined that a retail manager was not working a "composite job" simply because she performed elements of a salesperson position in addition to her managerial duties.  No. 20-12508, 2022 WL 170873, at *7-8 (D.N.J. Jan. 19, 2022).  As the DOT presumed that a retail manager may need to "perform[ the] work of subordinates, as needed," the plaintiff's past work could be described by a single DOT entry.  <u>Id.</u> at *8.  The ALJ therefore was not required to consider whether Plaintiff worked a composite job.  <u>Id.</u>

Similarly, the DOT entry for supervisor, steno pool (via cross-reference to the DOT's general definition of "supervisor") plainly contemplates that a supervisor will perform or assist in performing the duties of subordinates, <u>i.e.</u>, stenographers.  Plaintiff's past work, as reflected by her testimony, thus falls squarely within a single DOT entry.  Consequently, Judge Solomon was not required to determine whether Plaintiff worked a composite job consisting of "two or more occupations."  <u>See</u> SSR 82-61.

Plaintiff does not challenge the ALJ's conclusion that a person with Plaintiff's RFC could perform the job of supervisor, steno pool as generally required by employers throughout the

national economy.[5]  Accordingly, the ALJ's step four determination that Plaintiff was "not disabled" was supported by substantial evidence.

IV.  **CONCLUSION**

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.  An appropriate order follows.

<u>/s Madeline Cox Arleo</u><br>
**Hon. Madeline Cox Arleo**<br>
UNITED STATES DISTRICT JUDGE

Date: March 30, 2022

---

[5] The Court also disagrees that remand is necessary because the ALJ allegedly failed to permit Plaintiff to question the VE at the hearing.  First, the transcript shows that the ALJ offered Plaintiff multiple opportunities to ask questions concerning the VE's testimony.  See Tr. 45-47.  Moreover, and as discussed above, Plaintiff's own testimony establishes that she performed past work as a supervisor, steno pool, as that job is defined by the DOT.  Plaintiff has not suggested, and it is unclear to the court, how any further testimony by the VE would alter that result.